(No. 88-CC-0342-)

KIMBERLY WHITE, Claimant, *v.* THE BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES and LOUIS V. HENCKEN, Respondents.

*Opinion filed October 15, 1993.*

PEDERSEN & HOUPT, for Claimant.

DUNN, GOEBEL, ULBRICH, MOREL & HUNDMAN (HELEN E. OGAR, of counsel), for Respondent.

OPINION

MITCHELL, J.

Kimberly White was a student at Eastern Illinois University "EIU" residing from August, 1983 to December, 1984 in Lawson Hall. In January, 1985 she moved to room 429 in Taylor Hall. In anticipation of her junior year, she signed a housing contract dated April 8, 1985, with the university. The cost of $1,074 per semester can be proportioned to 57% ($612.18) for food costs and 43% ($461.82) for room costs.

Meeting with Lou Hencken, housing director for EIU, in mid-November of 1985, she told him of her wish to move into Sigma sorority house in January. There was no mention by her of any health problems. Hencken replied that university policy would not allow her to cancel the contract, but she could live in a different dorm or a different room in her current dorm. White declined the

two alternatives and in December of 1985 she paid $1,074 for her second semester, remaining in room 429 at her request.

Shortly after White's meeting with Hencken, her father, Robert White, phoned John Flynn (a fraternity brother and director of financial aid at EIU) to ask how his daughter could cancel the contract. Flynn stated that unless she met one of the circumstances specifically set forth in the contract she could not be released. There was no mention of any health problems but only her wish to move into the sorority housing.

In early December, Robert White called Hencken and talked about the possibility of Kimberly White moving into off-campus housing. Once again, no mention of health problems was made.

During this period, EIU had conducted a survey and issued a press release stating that there was "asbestos containing material" in certain university buildings; however, Kimberly's dorm room was not listed. In January of 1986, a memo to the residents from Hencken was distributed stating that "asbestos containing materials" were found in Taylor Hall. On or about January 17, 1986, Kimberly advised Hencken by letter that she would be moving out of Taylor Hall and that she was requesting a refund of the payment for the semester. She subsequently paid approximately $1,074 for off-campus room and board.

After the university did not refund her money, she filed suit for breach of contract, seeking actual damages and attorney's fees (Count I), and breach of implied warranty of habitability, seeking punitive damages, interest and attorney's fees (Count II). On December 28, 1987, the Court of Claims dismissed Count II for failure to

state a cause of action. Count I was tried before Commissioner Michael E. Fryzel on July 14, 1990.

Prior to her January 17, 1986, letter to Louis Hencken, there is no documented evidence that Kimberly White advised any person at the university or a doctor of any health problems (other than her allergies and childhood asthma). On the contrary, her physical for the swim team found she was healthy. In her several conversations with coach Ray Padovan wherein he expressed concern that she was missing practices (due in his belief to her time being taken up with sorority matters), she never mentioned any health problems that were causing her to miss practice. Kimberly White produced no witnesses (other than her father) or evidence of her complaints about her health during the time period before she moved out of Taylor Hall.

There is no proof that her dorm building contained asbestos. Per Jack Richie, even if the material around the elbow pipe was asbestos, it was well "encapsulated," with "no punctures, nothing friable that would indicate there would be any cause for any human concern." The air samples they took showed figures well below EPA/OSHA action levels. There is no evidence that any unreported health problems Kimberly White may have had were caused by her living conditions. Even if she believed such to be the case, she knew she had the options of moving to another room in that dorm or an entirely different dorm and declined both options.

The university contracted to provide Kimberly White with room and board for the academic year 1985-86. There is no evidence that they did not meet those contracted requirements—there is no breach of contract by the university. There is no statute, rule of law, stipulation or agreement which would allow Claimant payment for

attorney's fees and costs of litigation. Therefore, the reasonableness of such fees (which could be proven at a later date) is moot. Therefore, judgment is for the Respondent and against the Claimant.